# IN THE COURT OF APPEALS OF IOWA

No. 19-1432
Filed December 18, 2019

**IN THE INTEREST OF J.M.,**
**Minor Child,**

**D.S., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Scott County, Cheryl Traum, District

Associate Judge.

A mother appeals the termination of her parental rights to her child.

**AFFIRMED.**

Jean Capdevila, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Carrie E. Coyle, Davenport, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

A mother appeals the termination of her parental rights, arguing the court erred in finding termination is in the child's best interests. The mother's parental rights were terminated pursuant to Iowa Code section 232.116(1)(d), (h), and (i) (2019). The mother does not contest the sufficiency of the evidence supporting the statutory grounds for termination. Termination of parental rights are reviewed de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The child was born in July 2017 when the mother was sixteen years old. The child and the mother were both removed from parental custody in November but were placed together, initially in relative custody and eventually a foster home. Throughout the course of the child-in-need-of-assistance (CINA) proceeding for the child, the mother was also in the custody of the Iowa Department of Human Services (DHS) for her own CINA proceeding. The mother absconded with the child in February 2018. DHS attempted to relocate the mother and child, leading to an incident in which the mother took the child out the back door of a restaurant during the child's first birthday party to evade police and DHS. The mother and child returned to DHS custody in August 2018; the child was placed in foster care and the mother in a residential program. The child had not seen a doctor in several months and needed immediate medical treatment for multiple sores.

While in the residential program, the mother re-engaged in school, attempted to obtain consistent employment, and had supervised visitation with the child. The mother left the residential program in October to live with a "godmother." The mother had a string of short-term jobs and irregular school attendance. The mother turned eighteen in January 2019 and eventually returned to her mother's

home. The mother's employment continued to be unstable, she left school to pursue a GED, and she never found appropriate housing. The record contains conflicting statements regarding the mother's residence through the spring and summer of 2019. The mother insisted she lived with her mother, but agency representatives had reason to believe the mother was residing, at least part-time, with other persons and possibly in Rock Island, Illinois.

Throughout the course of proceedings, the mother consistently exhibited poor decision-making ability. The record shows the mother consumed alcohol and smoked marijuana, left the child unattended in the foster home shared by the mother and child without notifying the foster parent, was present during a physical altercation in which a person was injured with a knife and videotaped the altercation instead of calling police, and engaged in a dispute that led to property damage.

The mother also experienced growth during the course of proceedings. The mother learned to be attentive and engage in appropriate interactions during visits with the child. The mother expressed a clear desire to parent and developed a bond with the child. Following a permanency hearing in November 2018, the mother was given a six-month extension toward reunification. However, the mother's lack of improvement led the court to order initiation of termination proceedings in April 2019.

The mother only raises one issue on appeal, claiming termination is not in the best interest of the child. In considering what is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical,

mental, and emotional conditions and needs of the child." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. Termination may be averted if a statutory exception applies. *See* Iowa Code § 232.116(3).

Throughout the course of proceedings, the mother has been offered a variety of services, including, but not limited to, supervised visitation and family safety, risk, and permanency services. The record indicates the mother has been unable to incorporate the skills necessary to appropriately parent the child. The mother has consistently been unable to maintain employment and secure appropriate housing. The mother has never progressed beyond fully-supervised visitation with the child. Furthermore, although the mother and child share a bond, we cannot say it is so strong that "termination would be detrimental to the child." *See id.* § 232.116(3)(c). The record shows the child is in a safe foster placement, is bonded to the foster family, and the foster placement is available as a long-term placement. *See id.* § 232.116(2)(b). Accordingly, we find termination of the mother's parental rights is in the best interest of the child and affirm.

**AFFIRMED.**